## ESCANABA & LAKE MICHIGAN TRANSP. CO. *v.* CITY OF CHICAGO.

*(Circuit Court, N. D. Illinois.* July 7, 1882.)

COMMERCE—DRAW-BRIDGES NOT A NUISANCE—CITY REGULATIONS CONSTITUTIONAL.
   A city ordinance regulating the opening and closing of bridges over rivers
   within the limits of Chicago, so as to permit the alternate passage through of
   vessels, and the passage over the bridges of teams and persons, and which also
   provides for the closing of the bridges altogether, against passing vessels, be-
   tween the hours of 6 and 7 A. M. and 5:30 and 6:30 P. M., is not in conflict with
   the commerce clause of the constitution of the United States.

*Cook & Upton,* for complainant.

*F. S. Winston, Jr.,* and *Mr. Ryerson,* for defendant.

HARLAN, Justice, *(orally.)*   The complainant is a corporation of
the state of Michigan, owning a line of freight propellers, plying be-
tween Lake Superior and the docks of the Union Iron & Steel Com-
pany, located on the south fork of the south branch of the Chicago
river, near Thirty-second street, in the city of Chicago.   Under its
old charter the city of Chicago had the power "exclusively to erect
and construct, or to permit or cause or procure to be erected and con-
structed, float, pivot, or draw-bridges over the navigable waters within
the jurisdiction of said city, and keep the same in repair; said bridges
to have draws of suitable width."   By the new city charter of 1872
the city is given power "to construct and keep in repair bridges, via-
ducts, and tunnels, and to regulate the use thereof;" also "to deepen,
widen docks, cover, wall, alter, or change the channel of water-courses,"
and, further, "to make regulations in regard to the 'use of harbors,
towing of vessels, opening and passing the bridges."

By an ordinance of the city it is provided, among other things, as
follows:

   "Sec. 984. Between the hours of 6 and 7 in the morning, and half past 5
and half past 6 o'clock in the evening, Sundays excepted, it shall be unlawful
to open any bridge within the city of Chicago.

   "Sec. 985. During the hours between 7 o'clock in the morning and half
past 5 o'clock in the evening it shall be unlawful to keep open any bridge
within the city of Chicago, for the purpose of permitting vessels or other
craft to pass through the same, for a longer period, at any one time, than 10
minutes, at the expiration of which period it shall be the duty of the bridge-
tender or other person in charge of the bridge to display the proper signal and
immediately close the same, and keep it closed for fully 10 minutes, for such
persons, teams, or vehicles as may be waiting to pass over.   If so much time
shall be required when the said bridge shall again be opened, [if necessary for

vessels to pass,] for a like period, and so on alternately, [if necessary,] during the hours last aforesaid; and in every instance when any such bridge shall be opened for the passage of any vessel, vessels, or other craft, and closed before the expiration of 10 minutes from the time of opening, said bridge shall then, in every such case, remain closed for fully 10 minutes, if necessary, in order to allow all persons, teams, and vehicles in waiting to pass over said bridge.

"Sec. 986. Bridge-tenders, or persons in charge of the bridges, shall not close the same against vessels seeking to pass through until passengers, teams, or vehicles have been delayed fully 10 minutes by the bridges being opened."

The object of the present suit by complainant is to test the validity of the foregoing ordinance. The prayer of complainant is that upon final hearing the court will decree that the bridges, and each and every one thereof, erected across the Chicago river and across the north and south branches, and the south fork of the south branch, when closed and kept closed for the time prescribed by said ordinance, constitute material obstructions to the navigation of said river and the said branches thereof; that each of said bridges so closed and kept closed is a nuisance to the citizens of the states of Illinois and Michigan, as well as other states, and particularly to the complainant; that the ordinances so requiring the closing of said bridges be declared illegal and void; and that the said Harrison-street bridge, and the other bridges south and south-west thereof, across the south branch and the south fork of the south branch, and the piers on which they rest and all material used therein, which obstructs the free navigation of said river, are nuisances to be abated and removed. The complainant also prays that the city may be decreed to open the bridges on the approach of vessels desiring to pass the same, and keep the same open for such time and in such manner as not to obstruct the free navigation of the Chicago river and its said branches.

This case was heard before the district judge and myself upon the pleadings and proof. Justice Harlan announced that the press of business had prevented the preparation of any formal opinion covering the numerous and important questions discussed by counsel. That may hereafter be done. But, as his brother Blodgett and himself had reached a conclusion, entirely satisfactory to themselves, and which was not likely to be changed by further consideration of the case, and that parties, if they desire to take the case to a higher court, may not be delayed if such be their purpose, he would now announce that, in their opinion, the ordinance of the city is not in violation of the constitution of the United States or of any act of

congress, and that as there is no cause of action against the city, the bill would be dismissed.

NOTE.—A state may authorize the construction of a draw-bridge across a navigable stream. *Gibbons* v. *Ogden*, 9 Wheat. 203; *Pennsylvania* v. *Wheeling, etc., Bridge Co.* 13 How. 607; *Silliman* v. *Hudson Riv. Bridge Co.* 1 Black, 582; 4 Blatchf. 74, 395; *Albany Bridge Co.* 2 Wall. 403; *Silliman* v. *T. W. T. B. Co.* 11 Blatchf. 288; *Palmer* v. *Com'rs of Cuyahoga County*, 3 McLean, 226: *Pennsylvania* v. *Rensselaer & S. R. Co.* 15 Wend. 113.—[ED.